IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NAVDEEP BRAR,

|               |              |                   |
|---------------|--------------|-------------------|
|               | Petitioner,  | OPINION AND ORDER |
| v.            |              | 17-cv-790-wmc     |

DAVID MAHONEY,

Respondent.

---

In 2015, petitioner Navdeep Brar was convicted in two different Wisconsin counties for operating while intoxicated ("OWI") in violation of Wis. Stat. § 346.63(1)(a).  *State v. Brar*, Case No. 2014CT776 (Dane Cty. Cir. Ct. Apr. 3, 2015); *State v. Brar*, Case No. 2014CT273 (Sauk Cty. Cir. Ct. Sept. 28, 2015).  On both occasions, Brar had been pulled over, arrested and subjected to a blood test.  After pursuing his rights to direct appeal in state court, Brar filed separate petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 against the respective County Sheriffs, challenging those convictions.  In this case, petitioner challenges the constitutionality of his Dane County conviction.[1]  After being directed to respond in this case, Dane County Sheriff David Mahoney opposed Brar's petition on two, different procedural grounds, as well as on the merits.  For the reasons that follow, the court agrees that Brar's petition is procedurally barred from further consideration on collateral attack in federal court and, thus, must be denied.

---

[1] In *Brar v. Meister*, No. 17-cv-890-wmc (W.D. Wis.), petitioner Brar challenges his Sauk County conviction, which the state also opposes on procedural grounds.

BACKGROUND

**I.      Brar's Dane County Arrest, Blood Test and Conviction**

On July 2, 2014, a City of Middleton Police Officer Michael Wood stopped Brar for speeding and asked him to complete field sobriety tests.   After Brar performed the tests, including a preliminary breath test, Officer Wood concluded that Brar had failed the tests.   Accordingly, he arrested Brar for operating while intoxicated.

Upon arrival at the police station, Wood read Brar the Informing the Accused Form ("ITAF"), which outlines penalties for a person arrested for OWI.   During Wood's reading, Brar interrupted multiple times, asking Wood which type of test he would take and, at multiple points, whether Wood needed a warrant to conduct a blood test.   As to the warrant questions, Wood responded by shaking his head, as if to respond "no," meaning he did not need a warrant.   Brar responded that he did not understand, and that the question was complicated.   Then Brar asked if he could call a lawyer.   Eventually, the officer took Brar to a local hospital to draw blood, where Brar submitted to the test.   At that point, Brar's blood alcohol level was .186, more than twice the legal limit.

The State later charged Brar with an OWI, third offense in violation of Wis. Stat. § 346.63(1)(a), as well as operating a motor vehicle with a prohibited alcohol concentration in violation of Wis. Stat. § 346.63(1)(b).   After Brar moved to suppress the blood test results, based on a lack of consent to the blood draw, Dane County Circuit Court Judge John W. Markson held a suppression hearing on December 23, 2014, to resolve that motion.   During the hearing, the court received as evidence (1) the ITAF that the officer read to Brar after the arrest; (2) an audiovisual recording of Brar's conversation with the

officer, which is comprised of their entire conversation leading up to the moment the officer determined that he obtained consent; and (3) Officer Wood's testimony.

On direct examination, Wood testified that he read the entire ITAF to Brar and that he responded "of course" when asked to "submit to an evidentiary chemical test" of his blood.  (Tr. 12/23/14 (dkt. #17-12) at 6-7.)  At the same time, Wood acknowledged that it was hard to understand Brar, and that Brar made other comments and asked questions during their conversation, including that he did not want his driver's license revoked.  Wood clarified that he responded to Brar's questions by re-reading portions of the ITAF, ending by asking him again if he would submit to the blood test, to which Brar responded, "of course."  (*Id.* at 26, 47.)  On cross-examination, Wood agreed that Brar's "of course" was not a stand-alone sentence and it was hard to understand him.  Wood further agreed that Brar continued to speak after saying "of course," asking what type of test it would be and whether Wood needed a warrant for a blood test.  Finally, Wood acknowledged shaking his head "no" to indicate to Brar that a warrant was not necessary.

Based on this evidence, Judge Markson found that the state had met it burden to prove Brar consented to the blood draw.   The court detailed its reasoning as follows:

> First, we have the testimony of the officer who was, after all, there.   He's in the circumstance that night.   He is in the best position to determine what Mr. Brar said, and to the extent that he could, what he intended.   He gave testimony, and I found his testimony to be credible, that Mr. Brar said, when asked more than once, the officer said I need to know, I need you to answer yes or no, will you submit to the test?   Mr. Brar said, of course, he would submit.   And the officer said that Mr. Brar said, because he didn't want to have his license revoked, or words to that effect.
>
> There was nothing in the videotape that was inconsistent with that.   In fact, we did hear Mr. Brar, and I did hear him say this on the video:   "Of course."

3

And then his voice kind of trailed on, but certainly what we could make out is consistent with the officer's recollection and interpretation of Mr. Brar saying he didn't want to have his license revoked so of course he would submit to the test.

It does seem to me that at that point the Implied Consent Law has run its course. The officer complied with that. He read him the Informing the Accused form. Mr. Brar said of course he would submit, because he was not willing to pay the price of having his license revoked, and *Padley* says that's okay.

. . . .

We continue, and I think Mr. Kaiser's point is well taken, that the conduct of Mr. Brar that evening, while he professes some -- well, he asked a lot of questions before we even get to that point. And, after all, we do know that as a matter of fact -- well, let's set that aside. He asked a lot of questions that evening about a lot of different things. But once the officer starts to take him for the test, there is -- and I take Ms. Schmeiser's point that, you know, he didn't want to resist either, but neither was there any protest that, well, wait a second, I'm not consenting, I'm not agreeing to that. You need to get a warrant for that, or anything like that, that didn't happen. And so, again, the conduct of Mr. Brar that evening, I think, is consistent with the officer's testimony here.

The concern that I had . . . what do you make of his statement later, shortly after he says "of course he's going to agree to the test, because he doesn't want his license to be revoked," what do we make of his reference to "do you need a warrant for that" when he finds out, and it's affirmed, that he is going to be taken for a blood test? That is open to some interpretation, I grant that.

But as I look at the evidence here, the issue is Mr. Brar's having said of course he would consent to the test, does the officer then -- is he required to or, reasonably construed, does the statement, well, don't you need a warrant for that, should that be taken as effectively revoking the consent that he gave? And I don't think that that is a necessary conclusion. It's not the one that the officer drew, and I think the officer's interpretation of that is reasonable under the circumstances.

Mr. Brar asked a question, do you need a warrant for that, and the officer's response was to indicate by shaking his head no, which is a true and correct response, assuming there's been consent. Consent is an exception to the

warrant requirement.   He didn't need a warrant for that, because Mr. Brar had just consented.

So I think that's a reasonable interpretation of the evidence.   It is the interpretation that I draw having listened to the testimony, and so I guess that's the way we have to leave it.   I do find as a matter of fact that Mr. Brar did give consent.   Oh, I know, the one thing I wanted to ask, or to say, and this is why I asked the officer the question.   This is an experienced officer. The *McNeely* case, yes, was relatively new, but at this point, summer of last year, agencies have had some experience in implementing that. . . .   It's an objective standard, but I thought the officer's conclusion was reasonable under the circumstances.   And the availability of the warrant and familiarity with that requirement and what it takes to do that only supports the fact that, again, I think the consent was given.

So I certainly, I respect the basis for the motion and I understand the basis for the motion, but I think, having heard the evidence, I respectfully make the finding of fact that there was actual consent.   Therefore, there's no constitutional violation and no basis to suppress the blood test result, which will be admitted at trial.

(*Id.* at 46-49.)

Brar moved for reconsideration, submitting a professionally enhanced version of the audio from Exhibit 2.   Defense counsel in particular made a record that it was not possible to distinguish every word that was recorded.   The court denied the motion.   Ultimately, Brar entered into a no contest plea, and the court sentenced him to 110 days in jail, to run consecutive to his conviction and sentence in Sauk County Case No. 2014CT273.

## II.   Appeals

Brar challenged the constitutionality his conviction to the Wisconsin Court of Appeals and the Wisconsin Supreme Court, raising two arguments:   (1) he did not consent to the blood draw; and (2) even if he did consent, it was not voluntary.   Both courts

affirmed the circuit court's conclusions.

### A.    Wisconsin Court of Appeals

The Wisconsin Court of Appeals held that the circuit court reasonably concluded Brar consented to have his blood drawn and tested to determine his blood alcohol content, consistent with its individual factual findings indicating that the consent was voluntary. *State v. Brar*, 2015AP1261-CR, ¶ 18.   The Wisconsin Court of Appeals was also unpersuaded by Brar's arguments, pointing out that:   (1) Brar ignored the circuit court's finding that Brar consented, based on facts from the record; and (2) Brar made no showing that he actually resisted providing a blood sample at either the police station or the hospital.   *Id.* ¶ 20.   Further, although accepting that Brar raised the issue of voluntariness before the circuit court, the court of appeals rejected Brar's "involuntary consent" argument, since Officer Wood only denied any need for a warrant *after* Brar had already consented.   *Id.* ¶ 21.

### B.    Wisconsin Supreme Court

Brar appealed, and in a plurality opinion, the Wisconsin Supreme Court affirmed. Justice Roggensack authored that opinion, in which Justices Gableman and Ziegler joined, making *alternative* rulings with regard to Brar's consent.   First, the court concluded that by virtue of the express terms of Wis. Stat. § 343.305(2) -- an individual who "drives or operates a motor vehicle upon the public highways of this state . . . is deemed to have given consent to one or more tests of his or her breath, blood or urine" -- Brar consented to the blood draw simply by driving on the roads of Wisconsin.   *State v. Brar*, 376 Wis. 2d 685,

6

702-04, 898 N.W.2d 499, 508-509 (Wis. 2017).   Second, the court upheld the circuit court's determination that Brar consented under a "clearly erroneous" standard of review. 376 Wis. 2d at 704-07, 898 N.W.2d at 509-10.   In particular, the plurality court reasoned that Brar's question to the officer about whether he needed a warrant to take blood, having occurred *after* Brar had voluntarily consented, could "not vitiate the voluntariness of Brar's consent." *Id*.

Justices Kelly and Rebecca Bradley concurred.   In particular, Justice Kelly agreed with (and Justice Bradley joined in) the plurality's holding that the circuit court's finding Brar voluntarily consented to his blood test was not clearly erroneous.   *Id.*, 376 Wis. 2d at 708-09, 898 N.W.2d at 511-12.   However, in the second part of his concurrence, *not* joined by Justice Bradley, Justice Kelly sharply disagreed with the discussion of Wis. Stat. § 343.305(2), noting that the parties had not raised that issue with the court and expressing concern about whether the statute actually authorizes a law enforcement officer to obtain a sample of a driver's blood based on presumptive consent in a manner that passes constitutional muster.   *Id.*, 376 Wis. 2d at 716-17, 727, 898 N.W.2d at 515.

Justice Abrahamson wrote a dissenting opinion, in which Justice Ann Walsh Bradley joined, analyzing the factual record before the circuit court differently and finding that based on the record, Brar neither consented, nor was his consent voluntary.   Instead, in Justice Abrahamson's view, the record showed that Officer Wood gave Brar the wrong information about when a warrant was necessary, resulting in an unauthorized search.   *Id.*, 376 Wis. 2d at 732, 898 N.W.2d at 522-23.   Brar's jail sentence was been stayed pending

his appeals through the Wisconsin courts, and this court has continued the stay of sentence pending the outcome of this petition.

OPINION

Brar challenges the constitutionality of his conviction in *State v. Brar*, Case No. 2014CT776 (Dane Cty. Cir. Ct. Apr. 3, 2015). While not clearly delineated in Brar's initial petition, Brar's briefing appears to raise three, substantive grounds for relief: (1) Brar did not consent to the blood draw following his arrest; (2) even if Brar consented, that consent was not voluntary; and (3) the Wisconsin Supreme Court violated his Fourteenth Amendment due process rights and failed to give him a full and fair hearing in state court, having failed to adopt a clear standard for voluntary consent to a blood draw pursuant to an OWI arrest.

Under Section 2254, a federal district court may grant habeas relief only when a petitioner demonstrates that he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Since Brar will be in custody due to this state judgment should the stay be lifted, Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, governs. 28 U.S.C. 2254(d); *see also Hensley v. Municipal Ct.*, 411 U.S. 347 (1973). Even so, we begin with the proposition that § 2254(d) severely restricts a federal district court's review of a state judgment:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

8

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Conner v. McBride*, 375 F.3d 643, 648–49 (7th Cir. 2004).

Indeed, once the state court adjudicates the petitioner's claims on the merits, the federal court must be "highly deferential" to the state court's decision. *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015). In particular, to obtain habeas relief, the petitioner must show that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. Habeas relief is "a guard against *extreme* malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (emphasis added) (citation and quotation marks omitted). With this high hurdle before petitioner, the court will turn to the first and, because of that answer, only question before this court regarding petitioner's substantive attacks on his OWI conviction in Dane County, addressing Brar's initial two grounds for relief before turning to the third.

## I.   Grounds One and Two are Barred by *Stone v. Powell*

First, to the extent that petitioner is attempting to attack the denial of his motion to suppress the result of his blood draw, whether based on a lack of any consent or even

voluntary consent, he is not entitled to habeas relief under *Stone v. Powell*, 428 U.S. 465 (1976).  Generally, after *Stone*, litigants cannot relitigate motions to suppress in habeas proceedings because the remedy under the Fourth Amendment violations -- the exclusionary rule -- is prophylactic in nature, with its primary purpose being to prevent future Fourth Amendment violations, not to protect the rights of the defendant in the case at hand.  428 U.S. at 479, 492.  In *Stone*, in particular, the Supreme Court determined that relief under the exclusionary rule is generally unavailable in habeas proceedings because the costs of applying the rule outweigh its prophylactic benefits.  *Id.* at 493–94.  For that reason, even a demonstrable error by a state court generally is not enough to obtain habeas relief.  *Monroe v. Davis*, 712 F.3d 1106, 1115-16 (7th Cir. 2013).

There is a narrow exception to *Stone*'s bar to relief in federal court "when the State has failed to provide the habeas petitioner 'an opportunity for full and fair litigation of a Fourth Amendment claim.'" *Wallace v. Kato*, 549 U.S. 384, 395 n.5 (2007) (quoting *Stone*, 428 U.S. at 482).  However, a criminal defendant receives a full and fair opportunity to litigate if:  (1) he has clearly informed the state court of the factual basis for the claim; (2) the state court carefully and thoroughly analyzed the facts; and (3) the court applied the proper constitutional case law to the facts.  *Hampton v. Wyant*, 296 F.3d 560, 563 (7th Cir. 2002) (quoting *Pierson v. O'Leary*, 959 F.2d 1385, 1391 (7th Cir. 1992)).  Examples that fail to satisfy these requirements are extreme.  Indeed, only circumstances in which the court's error "betray[s] an unwillingness on the part of the [state] judiciary to treat [the petitioner's] claim honestly and fairly" will a federal habeas court reach the merits of the Fourth Amendment challenge.  *Monroe v. Davis*, 712 F.3d at 1114 (quoting *Stone*, 428

10

U.S. at 490).   As to the third requirement specifically, all the "state has to do is look to the appropriate body of decisional law" and "take seriously its obligation to adjudicate claims under the fourth amendment."   *Hampton*, 296 F.3d at 563-64.

Brar claims that the exception to *Stone* applies here because the Wisconsin Supreme Court denied him a full and fair opportunity to challenge his consent arguments.   The weakness in this argument is telling on its face, since Brar does *not* challenge the circuit court's handling of his consent arguments, and for good reason.   Brar was allowed to develop facts and arguments related to whether he consented, and the circuit court carefully considered Brar's evidence in support of his position.   Only after receiving that evidence -- mainly consisting of Officer's Wood's testimony and the audio recording of his conversation with Brar -- and carefully considering the applicable law, did Circuit Judge Markson conclude that Brar's "of course" indicated his consent under all the circumstances. The judge even acknowledged that Brar made some additional statements, and recognized that Brar fairly raised a challenge to his consent.   Ultimately, on balance, the judge found the government met its burden to prove consent based on finding Officer Wood's testimony credible, Brar's recorded statements and the circumstances as a whole.   Brar has not identified a defect in that proceeding or the circuit court's consideration of the evidence that would indicate he was unable to develop the facts or legal basis for his challenge.

Instead, Brar primarily focuses on the Wisconsin Supreme Court's varying approaches to his case reflected in the plurality, concurring and dissenting opinions.   Even Brar's arguments for avoiding *Stone's* general bar on revisiting the denial of a Fourth Amendment suppression motion in federal court is premised on potential *errors* in the

reasoning of the Wisconsin Supreme Court, rather than on some fundamental failure of that court to apply the relevant facts or law to his challenge to the blood draw as required to satisfy the narrow exception recognized in *Wallace*.

Petitioner Brar begins by claiming that the Wisconsin Supreme Court did not actually reach a consensus as to whether he expressly consented to the blood draw because the leading opinion relied in part on Wis. Stat. § 343.305(4) to find implied consent by virtue of Brar driving on Wisconsin roadways.   Specifically, Brar argues that the leading opinion's finding of implied consent -- followed by Justice Roggensack's failure to use the phrase "express consent" in concluding that Brar did not withdraw his implied consent -- demonstrates that the court failed to carefully and thoroughly analyze the facts related to his actual consent.   As Brar sees it, because only three justices joined the lead opinion, and only two justices joined Justice Kelly's finding on express consent, there was no majority decision upholding the circuit court's finding of voluntary consent.

Brar's argument misses the mark in at least two respects.   Even accepting that the Wisconsin Supreme Court's opinion in *Brar* did not establish a precedential rule does not permit this court to find a failure on the part of that court to apply the appropriate body of law or carefully analyze the facts, nor does Brar cite any authority for that proposition. On the contrary, Brar still would have received "full and fair litigation of [his] Fourth Amendment claim" under *Wallace*, just as he would have if the Wisconsin Supreme Court had denied review altogether and let the court of appeal's decision affirming stand without comment.   Regardless, Brar simply misreads the Wisconsin Supreme Court's opinion since a majority of the court (the three-member plurality and the two concurring justices) *did*

join in Justice Roggensack's alternative holding that the circuit court properly found Brar had voluntarily consented to have his blood drawn.   *Brar*, 376 Wis. 2d at 707-08, 898 N.W.2d at 510-11.

Brar's next argument applies the framework set forth by *Hampton* more directly, contending that the plurality opinion failed to apply the appropriate case law in ignoring implications of the Supreme Court's decision in *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016).   In *Birchfield*, the Court noted that in circumstances in which an officer reasonably can *either* acquire a warrant for a blood test, *or* alternatively have the arrestee take a breath test, a court should take those available alternatives into account in determining the reasonableness of the officer's decision.   *Id.* at 2184.   While Brar acknowledges that the plurality opinion cited *Birchfield* for the proposition that "consent to a search need not be express but may be fairly inferred from context," *Brar*, 376 Wis. 2d at 697, 898 N.W.2d at 505 (quoting *Birchfield*, 136 S. Ct. at 2185), his position is that the court's finding that Wis. Stat. § 343.305(2) established implied consent ignored this principle.

Again, however, Brar appears deliberately (or perhaps obtusely) to ignore Justice Roggensack's alternative holding -- and the holding in which five justices ultimately joined -- that evaluated the circuit court's findings of fact related to both consent and the voluntariness of the consent consistent with *Birchfield*, and concluded explicitly, if alternatively, "the circuit court found that Brar consented by his responses to the officer's questions," and "[t]he evidence supports the circuit court's finding, and we conclude it was not clearly erroneous."   *Brar*, 376 Wis. 2d at 703, 898 N.W.2d at 509.   And Justice Kelly's concurrence, in which Justice Bradley joined, agreed with that portion of the

plurality's holding. *Id.*, 376 Wis. 2d at 709, 898 N.W.2d at 511.  While Brar would make much of Justice Roggensack's failure to use the word "express" in reviewing the circuit court's conclusions -- arguing that this line of reasoning allowed the court to find Brar did not withdraw his implied consent, rather than that he actually consented -- the plurality opinion also went on to approve explicitly the circuit court's factual finding with respect to Brar's actual consent.

Next, Brar pivots and argues that the Wisconsin Supreme Court's decision was based on an *unreasonable* interpretation of the facts, ignoring that his affirmative statements were unclear and that his other statements before, and after arguably agreeing to the blood draw should have prompted that court to fault the circuit court's conclusion that Brar consented.  In particular, Brar takes issue with the plurality commenting, "[i]t is well-established that consent may be in the form of words, gesture or conduct," arguing that Brar's later statements indicated, at the very least, that he may have regretted consenting to the blood test.  However, this argument completely deviates away from the narrow exception recognized by the Supreme Court in *Wallace* and the test articulated by the Seventh Circuit in *Hampton* as to whether he received an opportunity for a full and fair litigation of his Fourth Amendment claim; instead, it moves on to a dispute over the merits of the Wisconsin Supreme Court's specific analysis of the circuit court's weighing of the evidence.  In delving into the merits, Brar effectively concedes that the court *did* review and analyze the relevant facts, and indeed that Justice Roggensack noted that Brar made other statements surrounding his "Of course" -- indicating that he did not want his license revoked -- but found these statements still suggested that his consent was voluntary under

14

the totality of the circumstances, or at least that the circuit court's findings as to both consent and voluntariness were not clearly erroneous.   While Brar clearly disagrees with Justice Roggensack's characterization of his statements, and raises various arguments suggesting that she (along with the circuit court) analyzed them incorrectly, he fails to recognize that he is arguing an error in those courts' analysis, *not* their refusal to evaluate the facts, or a failure to apply the proper case law that might justify re-litigation of his Fourth Amendment challenge in state court.

Finally, to the extent Brar's arguments implicitly takes issue with the fact that the plurality opinion ventured into an analysis not raised by the parties, Justice Roggensack's independent introduction of Wis. Stat. § 343.305(4) into the analysis is *not* a basis to conclude that Brar was deprived of a full and fair opportunity to develop his claim.   As the Seventh Circuit explained in *Hampton*, a state court's reliance on authorities not cited by the parties does not necessarily deprive a defendant of a full and fair opportunity to litigate, even if the court erred.   296 F.3d at 564.   Indeed, in *Hampton*, the district court granted a habeas petition in part because the state court had relied on its own independent research.   *Id.*   In reversing, the Seventh Circuit challenged the very notion that:

> [A] court that thought the briefs inadequate and tried to think independently would invite federal intervention to correct any error.   That can't be right. . . .   [I]t is the sleepwalking judge, not the diligent one, who deprives the litigant of the personal right to careful, individual consideration.

*Id* at 564-65.   Clearly, Brar has made arguments challenging the findings of the Wisconsin courts that addressed his suppression motion, especially the finding of the Wisconsin Supreme Court, but Brar has made *no* colorable claim that he was robbed of the

opportunity to fully present and develop his arguments to each of these courts.[2]   As such, there is no basis for the court to address the merits of Brar's suppression motion in the context of a federal habeas petition.

## II.   Ground Three is Procedurally Defaulted for Lack of Fair Presentment

As for Brar's third ground for relief -- that the Wisconsin Supreme Court's decision violated his Fourteenth Amendment due process rights -- Brar failed to raise it in the Wisconsin courts, making it procedurally defaulted.   In determining whether a habeas petitioner first and fairly presented a federal claim to the state courts, a federal court must consider four factors: (1) whether the petitioner relied on federal cases to engage in a constitutional analysis; (2) whether the petitioner relied on state cases that apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim such that it calls to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts within the mainstream of constitutional litigation.   *See Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006).   However, federal courts must avoid "hypertechnicality" in deciding whether habeas petitioners adequately raised their constitutional claims in the state courts.   *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992).   "Mere variations in the same claim rather than a different legal theory will not preclude exhaustion."   *Wilks v. Israel*, 627 F.2d 32, 38 (7th Cir. 1980).

---

[2] Brar would also makes much of the discord among the Wisconsin Supreme Court justices, but those disagreements do not reflect a missed opportunity to offer up his view of the facts and circumstances surrounding the events leading up to his blood test.   If anything, they reflect a vigorous sifting and winnowing that undermine his claim to federal review, however much Brar may have wished for a broader consensus.

In weighing the balance between "fair presentation" and "hypertechnicality," the Supreme Court helpfully notes that a litigant wishing to present a federal claim must make his intent clear in his state court submissions:

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

*Baldwin v. Reese*, 541 U.S. 27, 31 (2004).   This requirement is particularly true with respect to procedural due process claims.   *See Wilson v. Briley*, 243 F.3d 325, 328 (7th Cir. 2001) ("[A]buse-of-discretion arguments are ubiquitous, and most often they have little or nothing to do with constitutional safeguards."); *Verdin*, 972 F.2d at 1475 (because due process claims are "particularly indistinct" and overlap with state claims, defendant must do more than refer vaguely to "due process" or "denial of fair trial" to fairly present constitutional due process claim to state court).

Unfortunately for Brar, all it takes is a cursory review of his appellate and supreme court briefs to conclude that he *never* raised a claim that the blood draw violated his Fourteenth Amendment due process rights.   Brar's excuse for this failure is both facially sensible and understandable:   his due process claim derives from the Wisconsin Supreme Court's "fractured" decision, and thus this federal habeas petition is his first shot at challenging the Wisconsin Supreme Court's conclusion.   However, it is also not entirely accurate.

As respondent points out, Brar could have raised due process concerns before the Wisconsin Supreme Court in a motion for reconsideration pursuant to Wis. Stat. § (Rule)

809.64.  *See, e.g.*, *State v. Weber*, 164 Wis. 2d 788, 476 N.W.2d 867, 867-68 (1991) (denying motion for reconsideration that argued the Wisconsin Supreme Court's decision violated due process by not providing notice of the grounds on which it was based).   Brar failed to take that step, and for that reason, he is at least arguably barred from now raising it in state court in a post-conviction motion under Wis. Stat. § 974.06.  *See State v. Romero-Georgana*, 2014 WI 83, ¶ 32, 360 Wis. 2d 522, 849 N.W.2d 668.   ("[I]f the defendant did file a motion under § 974.02 or a direct appeal or a previous motion under § 974.06, the defendant is barred from making a claim that could have been raised previously unless he shows a sufficient reason for not making the claim earlier.").

Nor can Brar be excused for his failure to exhaust this claim.   When a petitioner procedurally defaults his claims, habeas review is available only if he can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).   "Cause" for the default means "that some objective factor" prevented compliance with the state's procedural rules.   *Id.* at 753.   "Prejudice" means that the alleged violations "worked to [the petitioner's] *actual* and substantial disadvantage," which infected his entire proceeding with "error of constitutional dimensions."   *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004) (original emphasis).   A fundamental miscarriage of justice occurs when the petitioner presents evidence showing that he is "actually innocent" of the charges against him.   *See, e.g.*, *Dretke v. Haley*, 541 U.S. 386, 393 (2004).   As discussed, Brar has submitted little evidence of cause or prejudice, and *no* evidence that he is actually innocent.

"To establish cause for his default, a petitioner ordinarily must show that some external impediment blocked him asserting his federal claim in state court." *Perruquet*, 390 F.3d at 514-15.   Brar makes no effort to point to any barrier to him developing his Fourteenth Amendment claim in state court.   Instead, Brar's position is that since his due process claim arose out of the Wisconsin Supreme Court's opinion, and his claims are interwoven, this court's consideration of all of his claims will not offend the principle of comity.   Yet Brar cites no authority for this proposition, nor an adequate explanation for not at least *attempting* to seek relief in state court before presenting the claim here.   Instead, Brar claims that any post-conviction motion before the circuit court, or a motion for reconsideration with the Wisconsin Supreme Court, would have most assuredly been rejected.   Merely asserting that exhaustion would have failed is not enough to be relieved of the obligation, however, a petitioner must show that there is no "available state procedures for determining the merits of petitioner's claim." *White v. Peters*, 990 F.2d 338, 341-42 (7th Cir. 1993) (citing *Engle v. Isaac*, 456 U.S. 107, 130 (1982) and 28 U.S.C. § 2254(c)); *see also Spreitzer v. Schomig*, 219 F.3d 639, 648 (7th Cir. 2000).   Here, Brar acknowledges that he could have sought reconsideration before the Wisconsin Supreme Court.   Accordingly, Brar has procedurally defaulted on his claim that the Wisconsin Supreme Court's decision violated his due process rights, and he cannot be excused from that default without at least having attempted to raise it in state court first.   As such, like his Fourth Amendment grounds for relief, the court cannot reach the merits of this claim.

Of course, given its ruling in section I of the opinion above, the court has also effectively ruled on the merits of the due process claim:  having found that the grounds

on which Brar lost 5-4 before the Wisconsin Supreme Court was not new or surprising in the least.   Rather, the majority of the Wisconsin Supreme Court upheld his conviction on grounds that Brar had argued and lost from the very start before the state circuit court on the facts:   he had voluntarily consented to a blood draw.

## III.   Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2255 Cases, this court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner.   A certificate of appealability will not issue unless Brar makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires him to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).   Although the rule allows the court to ask Brar to submit argument on whether a certificate should issue, it is not necessary to do so in this case.   Because reasonable jurists would not debate whether Brar's Fourth Amendment challenges are barred by *Stone* and his Fourteenth Amendment ground has been defaulted, the court will not issue him a certificate of appealability.

For the same reason, the stay of execution of sentence will continue for 21 days.

ORDER

IT IS ORDERED that:

1)  Petitioner Navdeed Brar's petition under 28 U.S.C. § 2254 DENIED.

2)  No certificate of appealability will issue.

3)  The stay of Brar's sentence will continue for 21 days from the date of this order.

Entered this 7th day of July, 2020.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge